UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE  DIVISION

Demarcet                                                                Civil Action No. 11-1961

versus                                                                     Judge Tucker L. Melançon

General Nutrition Corporation,                            Magistrate Judge C. Michael Hill
et al

**MEMORANDUM ORDER**

Before the Court is plaintiffs, Danny Demarcet, on behalf of his son DeBryson Demarcet's, Motion To Remand [Rec. Doc. 8], defendants, General Nutrition Corporation and Chase Lejeune's, opposition thereto [Rec. Doc. 15], plaintiffs' Memorandum in Support [Rec. Doc. 22] and defendants' Supplemental Memorandum in Opposition [Rec. Doc. 21].

*I.  Background*

This action arises out of plaintiffs' complaint for damages against General Nutrition Corporation ("GNC") and its employee, Chase Lejeune.[1]  On October 21, 2011, plaintiffs filed a Petition for Damages in the 16th Judicial District Court, Parish of Iberia, State of Louisiana.  Plaintiffs state the following allegations in their Petition.

DeBryson Demarcet purchased a product known as "Mega Men Sport" from a GNC store in New Iberia, Louisiana.  Petition at ¶¶ 1-2.  Mega Men Sport contains an ingredient

---

[1] In plaintiffs' Original Petition for Damages, Chase Lejeune was named as "Chase Doe" as plaintiffs had a business card containing only the sales person's first name.  In the Notice of Removal, defendants state that "Chase Doe ... is Chase Lejeune, who is a resident of Louisiana."  *R. 1, ¶12.*

known as "Burn 60." *Id. at ¶ 4*. Defendants failed to warn plaintiffs that people using Burn 60 should consume lots of liquids. *Id. at ¶¶ 6-10*. DeBryson Demarcet was hospitalized and diagnosed with "diabetic ketoacidocis [sic], new onset diabetes mellitus, renal insufficiency, and other diagnoses" as a result of consuming Mega Men Sport without drinking a lot of liquids. *Id. at ¶¶ 11-12*. Plaintiffs assert claims against GNC and Lejeune under the Louisiana Product Liability Act ("LPLA") for construction or composition defect, design defect, inadequate warning and breach of warranty, and for state law negligence. *Id. at ¶¶ 18-39*.

On November 10, 2011, defendants removed this action on the grounds that plaintiffs improperly joined the non-diverse defendant, Chase Lejeune. *R. 1*. Plaintiffs filed the Motion to Remand before the Court denying defendants' allegations of improper joinder and moving the Court to remand this action on the basis that remand is proper under 28 U.S.C. § 1447 because the Court lacks subject matter jurisdiction over the non-diverse defendant, Chase Lejeune. *R. 8*.

## II. Analysis

Plaintiffs contend in their motion to remand that because defendant Lejeune and the plaintiffs are citizens of Louisiana, there is an absence of complete diversity of citizenship, and thus, no subject matter jurisdiction exists. Under 28 U.S.C. § 1447(c), a district court is mandated to remand a case if, at any time before final judgment, it appears the court lacks subject matter jurisdiction. Defendants oppose plaintiffs' motion asserting that the removal of this action is based on the improper joinder of Lejeune. In particular,

defendants argue that plaintiffs have failed to allege that Lejeune, the sales associate who allegedly sold the Mega Man Sport product to defendants, personally owed a duty to warn to plaintiffs.

When a non-diverse party is properly joined as a defendant, a federal court lacks subject-matter jurisdiction over the case pursuant to 28 U.S.C. § 1332 and the case may not be removed from state court. However, a defendant may remove the case by showing that the non-diverse party was improperly joined. *R.C. Tippen v. Republic Fire and Cas. Ins. Co.*, 2007 WL 4219352, at *2 (E.D.La. Nov.28, 2007) (Vance, J.) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir.2003)). A defendant may establish improper joinder by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant. *Id*. (citing *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir.2003)). As defendants have not alleged actual fraud in the plaintiffs' pleading of jurisdictional facts, the Court will consider only the second test for improper joinder.

Because the doctrine of improper joinder is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one. *Id*. In order to show that plaintiffs are unable to establish a cause of action against the non-diverse defendant, the defendant claiming improper joinder must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *C.S. Gaidry, Inc. v.*

*Union Oil Co. of Cal.*, 2009 WL 2765814, at *2 (E.D.La. Aug.27, 2009) (Vance, J.) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc)). This means that there must be a reasonable possibility of recovery, not merely a theoretical one. *Campbell v. Stone Ins., Inc*., 509 F.3d 665, 669 (5th Cir.2007).

In conducting an inquiry as to whether a plaintiff has a reasonable basis of recovery under state law, the Court may utilize one of two procedures. First, the court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. Ordinarily, this type of analysis will be determinative. *See id*. If it is apparent that the plaintiff has "misstated or omitted" determinative facts that would determine the propriety of joinder, however, "the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). In addition, the Court must resolve all ambiguities of state law in favor of the non-removing party. *Id*.

In their motion to remand, plaintiffs contend that they have a claim against Lejeune for state law negligence.[2] Thus, the issue before the Court is whether plaintiffs have a reasonable basis for recovery under state law negligence against Lejeune as an employee

---

[2] Defendants assert that plaintiffs have failed to state any allegations that Lejeune is liable for failure to warn under the Louisiana Products Liability Act ("LPLA"). The record is clear that plaintiffs' only allegations as to Lejeune are for state law negligence.

of GNC such that his joinder was not improper. Under Louisiana law, an employee, "like all persons, has a general duty to exercise due care so as to avoid injuries to third persons." *Ford v. Elsbury*, 32 F.3d 931, 935–36 (5th Cir.1994)(citing *Canter v. Koehring Co.*, 283 So.2d 716, 722 n. 7 (La.1973)(superceded by statute on other grounds). In *Canter*, the Louisiana Supreme Court held that an employee can be held individually liable to a customer if he has a personal duty to the plaintiff that he breaches. *Canter*, 283 So.2d at 721. There, the Louisiana Supreme Court enunciated a four-part test for determining whether an employee has breached a personal duty to the plaintiff:

> (1) The employer must owe a duty of due care to the customer;
>
> (2) this duty must be delegated by the employer to the particular employee;
>
> (3) the employee must breach this duty through his own personal fault; and
>
> (4) personal liability cannot be imposed on the employee simply because of his general administrative responsibility for performance of some function of the employment; he must have a personal duty to the plaintiff that was not properly delegated to another employee.

*Id*. The *Canter* court noted that an employee could not be personally liable "simply because of his general administrative responsibility for performance of some function of employment." *Id*. Instead, the employee had to have "a personal duty towards the plaintiff." *Id*. If the employer's responsibility has been delegated, the employee "is not personally at fault and liable for the negligent performance of this responsibility *unless* he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm." *Id*. (emphasis added).

The Court first considered plaintiffs' motion to remand in January 2012.  In arguing that they have alleged a viable negligence claim against Lejeune, plaintiffs cite the following allegations in their Original Petition:

> 9. Chase [Lejeune] was the employee of GNC at the store who sold the 'Mega Man Sport' to DeBryson Demarcet.
>
> 10.  Chase [Lejeune] did not inform DeBryson Demarcet that the customer taking 'Mega Man Sport' had to drink a lot of liquids."

*Petition at ¶¶ 9 & 10*.  Defendants argue that plaintiffs' Petition for Damages contains no allegations that GNC delegated to Lejeune any duty of care that GNC owed to customers who purchased GNC's dietary supplements or that Lejeune had any personal knowledge of a dangerous condition that might harm DeBryson Demarcet, i.e. taking the product without drinking a lot of liquids.

In light of the foregoing arguments as well as the pertinent jurisprudence, on January 17, 2012, the Court issued an order requiring the parties "to conduct remand-related discovery and to file summary judgment type evidence limited solely to the discrete and undisputed facts related to GNC's delegation of duty to its employee, Chase Lejeune, and Chase Lejeune's personal knowledge of the alleged requirement to drink a lot of liquids with the product at issue in this case." *R.  20.*  On February 7, 2012, the parties filed briefs based on the limited discovery ordered by the Court.  *R. 21, Defendants' Suppl. Memo. in Opposition; R. 22, Plaintiff's Memo. in Support.*  Accordingly, the Court will consider plaintiffs' February 7 memorandum in support ("memorandum in support") and defendants' February 7 supplemental memorandum in opposition ("supplemental memorandum") in

addition to plaintiffs' motion to remand and defendants' opposition thereto. *R. 8, 15, 21, 22.*

In their memorandum in support, plaintiffs cite the deposition of Thomas Scott, the Training and Field Communications Manager for GNC. *R. 21-4, Scott Depo*. Plaintiffs contend that, as a sales associate at GNC, Lejeune was in the position of interacting with customers, *Id. at 9:18-22, 12:23-13:1*, and was to be knowledgeable about GNC products their labels in order to inform the customers about the products, *Id. at 13:8-12, 24:5-8*. Thus plaintiffs assert, Lejeune must be "presumed" to have knowledge of the dangers present with the taking of Burn 60 contained in the Mega Man Sport product, which "could give rise to the personal duty contemplated in *Canter*." *R. 22.*

Also citing Scott's testimony, defendants assert that GNC's sales associates are not trained or expected to extend warnings to customers regarding potential risks posed by a particular product. *Id. at 22:23-23:22*. Nor are the sales associates responsible for independently learning about the products sold in GNC stores. *Id. at 13:2-17, 14:22-15:8*. Rather, they are expected to use information provided by GNC along with a product's label to explain or answer questions about the product. *Id. at 13:2-22; 14:11-17*. The level of knowledge expected of GNC's sales associates regarding products sold in GNC stores is that which is greater than "the typical retail customer." *R. 21-3, GNC's Answers to Discovery*, *No. 7*.

In his own deposition testimony, Lejeune stated that GNC never told him he had a duty as a sales associate to inform the customer on how to properly take a supplement. *R.*

*21-4, Lejeune Depo., 15:2-6*.  Lejeune further stated that the information regarding the Mega Man Sport product which he was provided as a sales associate consisted of the product's label and a binding containing certain training and sales materials on GNC's products.  *Id. at 12:19-13:2*.  Lejeune stated that he was not aware of any warnings related to the supplement Burn 60.  *Id. at 13:18-20*.  He knew that the product label of Mega Man Sport said to "consult a physician before using" and "do not use if you're pregnant or nursing" or if you have "any kind of medical conditions."  *Id. at 13:21-14:6*.  More specifically, Lejeune testified that he was not personally aware of the necessity to drink a lot of water while taking Burn 60.  *Id. at 13:9-16*.

The record establishes that defendant Lejeune was a GNC sales associate who was neither trained nor expected to extend warnings to customers regarding the potential risks posed by a product.  As with all GNC sales associates, Lejeune was merely provided GNC information along with the Mega Man Sport label to answer questions or explain products to consumers.  GNC never advised Lejeune that he had a duty to inform customers as to how to properly take a supplement and never told him that consumers of Mega Man Sport should drink a lot of liquids when taking the product.  The Mega Man Sport label does not contain any warning regarding the amount of liquids a person should consume when taking the product.  Thus, considering the evidence produced from the Court's summary inquiry, taking into account all unchallenged factual allegations, including those alleged in the Petition, in the light most favorable to the plaintiffs, the Court finds that Chase Lejeune was improperly joined.  It is therefore

**ORDERED** that plaintiffs, Danny Demarcet, on behalf of his son DeBryson Demarcet's, Motion To Remand [Rec. Doc. 8] is **DENIED**.

Thus done and signed this 15th day of February, 2012 at Lafayette, Louisiana.

_____
Tucker L. Melançon
UNITED STATES DISTRICT JUDGE