UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DANNY DEMOUCHET** | * | **CIVIL ACTION NO. 11-1961** |
| **VS.** | * | **MAGISTRATE JUDGE HILL** |
| **GENERAL NUTRITION CORP.** | * | **BY CONSENT OF THE PARTIES** |

**REASONS FOR JUDGMENT**

Pending before the Court is Defendant General Nutrition Corporation's ("GNC") Motion for Summary Judgment filed on January 27, 2014.  [rec. doc. 51].  Plaintiff, Danny Demouchet ("Demouchet"), filed opposition on February 17, 2014.  [rec. doc. 54]. GNC filed a reply on February 25, 2014.  [rec. doc. 57].  Oral argument was held in open court on March 24, 2014, after which I took the motion under advisement.  [rec. doc. 61].

For the following reasons, the motion is **GRANTED**.

**Background**

On or about April 3, 2011, DeBryson Demouchet ("DeBryson"), age 17, purchased a dietary supplement,"Mega Men Sport," from the General Nutrition Store in New Iberia, Louisiana.  [rec. doc. 51, Exhibit A, DeBryson Deposition ("DeBryson Depo."), pp. 8:14-18, 30:7-13].  Mega Men Sport is designed to support the overall health, athletic performance and exercise intensity of active men.  [rec. doc. 51, Exhibit J].  The Burn 60

component of the product contains 180 milligrams of caffeine. [rec. doc. 51, Exhibit K., Deposition of Guru Ramanathan, Ph.D. ("Ramanathan Depo.), p. 14:11-14].

At the time of purchasing Men Mega Sport, DeBryson was generally overweight and inactive. However, between November 17, 2010 and April 5, 2011, he had lost about 23 pounds. [rec. doc. 51, Exhibit C, Dr. LeAndre W. Odom's April 5, 2011 medical notes].

Before purchasing Mega Men Sport, DeBryson did not read or review the product packaging, label or instructions. [DeBryson Depo., pp. 13:10-12, 57:23-58:9]. On the evening that he purchased it, he took one packet with a glass of water. [DeBryson Depo., pp. 16:15-17:18]. The following two mornings, he consumed the product with a glass of water, a glass of juice and breakfast. [DeBryson Depo., pp. 21:22-22:17, 25:13-23].

Two days after taking the product, DeBryson started feeling weak and tired while at school. [DeBryson Depo., p. 26:15-25]. He had drunk Gatorade that day because he was thirsty. [DeBryson Depo., p. 27:11-19]. That afternoon, DeBryson called his father to pick him up from school. [DeBryson Depo., pp. 27:25-28:3].

After taking DeBryson home, Demouchet brought DeBryson to see the family doctor, Dr. Odom. [DeBryson Depo., p. 28:4-15; rec. doc. 51, Exhibit B, Danny Demouchet Deposition "(Danny Depo."), p. 28:7-13]. Dr. Odom examined DeBryson and prescribed nausea medication. [Danny Depo. pp. 28:14-29:9; Exhibit C].

When DeBryson did not improve the next day, his father brought him to the emergency room. [Danny Depo., pp. 37:13-38:2]. At the hospital, DeBryson was treated for dehydration and diabetic ketoacidolosis. [rec. doc. 51, Exhibit D, Dauterive Hospital Discharge Summary dated April 12, 2011]. His discharge diagnoses were DKA, new onset diabetes mellitus, hypertension, renal insufficiency, positive blood cultures and leukocytosis. [Exhibit D]. He was prescribed diabetes medications. [Exhibit D; rec. doc. 51, Exhibit E, Medication Reconcilation].

On October 21, 2011, Demouchet, on behalf of DeBryson, filed a Petition for Damages against GNC in the 16th Judicial District Court, Iberia Parish, State of Louisiana, alleging a cause of action under the Louisiana Products Liability Act, LA. REV. STAT. ANN. § 9:2800.51 *et seq*. ("LPLA"). Specifically, he asserted that Mega Men Sport was unreasonably dangerous because its label did not warn consumers to drink lots of liquids while taking the product.

On November 10, 2011, GNC removed this action on the basis of diversity jurisdiction under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332.

**Summary Judgment Standard**

Fed. R. Civ. Proc. 56(a) provides that a motion for summary judgment shall be granted if the pleadings, depositions, discovery responses, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When the burden at trial rests on the nonmovant,

the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Courts consider the evidence in the light most favorable to the non-movant, yet the non-movant may not rely on mere allegations in the pleading; rather, the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Id*. (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). After the non-movant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Id*. (*citing Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2458.)).

## Law and Analysis

Demouchet asserts a products liability claim under LA.REV. STAT. § 9:2800.57 of the LPLA due to GNC's failure to warn consumers to drink lots of water when taking Mega Men Sport.

LPLA has a single cause of action holding manufacturers liable for damages "proximately caused by a characteristic of the product that renders [it] unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." *Roman v. Western Mfg.*, 691 F.3d 686, 697 (5th Cir. 2012) (*citing* LA. REV. STAT.

ANN. § 9:2800.54); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 261 (5th Cir.), *cert. denied*, 537 U.S. 824 (2002).

To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *Stahl*, 283 F.3d at 261 (5th Cir. 2002) (*citing* LA. REV. STAT. ANN. § 9:2800.54(A)).

A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria:

> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

§ 9:2800.54(B).

The only claim asserted by Demouchet is for inadequate warning under § 9:2800.54(b)(3). Specifically, Demouchet asserts that GNC failed to warn consumers

that they should drink lots of water while taking Mega Men Sport.

To maintain a failure-to-warn claim, a plaintiff must demonstrate that "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." *Stahl,* 283 F.3d at 261; § 9:2800.57.  To meet the first prong of this test, the Fifth Circuit has indicated that a plaintiff must provide evidence about the "cause, frequency, severity, or consequences" of the dangerous characteristic in question.  *Id.* at 264 (*quoting Grenier v. Med. Engineering Corp.*, 243 F.3d 200, 205 (5th Cir. 2001)); *see also Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000) (finding that liability for failure-to-warn requires a plaintiff to provide evidence of the probability or risk of injury from the allegedly damaging characteristic of the product).

A manufacturer is liable for inadequate warning only if a product's defect was a *proximate cause* of the plaintiff's injury.  (emphasis added).  *Ayala v. Gabriel Bldg. Supply*, 2013 WL 1789522, *5 (E.D. La. April 26, 2013); LA. REV. STAT. § 9:2800.54(A). In addition to proving causation in fact, a plaintiff must also demonstrate that the inadequate warning was the most probable cause of his injury.  *Id.* (*citing Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994)).

Demouchet alleges that as a result of DeBryson's taking Mega Men Sport for three days without drinking lots of liquids, he was hospitalized and diagnosed with dehydration, ketoacidosis, new onset diabetes, and renal insufficiency. He asserts that GNC and/or its salesman should have warned DeBryson about the risk of not drinking adequate fluids while consuming this product.

GNC argues that there is no evidence establishing any connection between Mega Men Sport and DeBryson's alleged medical conditions. [rec. doc. 51, p. 1]. Simply put, defendant argues, there is no evidence that Mega Men Sport posed any risk of causing diabetes or related medical conditions and, therefore, GNC had no duty to warn of these non-existent risks. Further, defendant argues, DeBryson's treating physicians were unable to render an expert opinion as to the cause of his injuries, in particular, whether the amount of caffeine contained in Mega Men Sport could cause dehydration and ketoacidosis. [rec. doc. 51, p. 8].

Under Louisiana jurisprudence, the plaintiff in a suit under the LPLA bears the burden of proving, by a preponderance of the evidence, a causal relationship between his injury and the use of the product. *Kemp v. Metabolife Int'l, Inc.*, 2004 WL 2095618, *3 (E.D. La. Sept. 13, 2004) (*citing Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95); 650 So.2d 757, 759[1]). The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical

---

[1]*Called into doubt* by *Kliebert v. Breaud, Inc.*, 2014 WL 346620 (La. App. 5 Cir. Jan. 31, 2014); 13-CA-655; — So.3d —.

testimony that it is more probable than not that the subsequent injuries were caused by the product. *Id.*; *Autery v. SmithKline Beecham Corp.*, 2011 WL 1812793, *6 (W.D. La. April 12, 2011), *report and recommendation adopted*, CIV. 05-0982, 2011 WL 1828343 (W.D. La. May 12, 2011), *aff'd sub nom*, *Autery v. GlaxoSmithKline, L.L.C.*, 496 F. Appx. 388 (5th Cir. 2012).

Proof of causation has two components, general and specific. *Id. (citing Pick v. American Medical Systems, Inc.*, 958 F.Supp. 1151, 1164 (E.D. La.1997)). General causation deals with whether the substance at issue can cause diseases or disorders in people in general. *Id*. Specific causation focuses upon whether the substance was in fact the cause of the ailments or symptoms in the particular patient. *Id*. An inability to establish specific causation is fatal to the plaintiff's claim. *Id*. (*citing Pick* at 1163).

Here, Demouchet claims that GNC's product was unreasonably dangerous in that it did not contain an adequate warning that Mega Men Sport should be taken with lots of water. He asserts that DeBryson's failure to consume adequate fluids while taking Mega Men Sport caused his dehydration and resulting ketoacidosis.

In cases such as this, involving complex issues of medical causation that are beyond the realm of knowledge and experience of the ordinary juror, expert testimony must be presented by the plaintiff to prove specific causation. *Autrey* at *6 (*citing Kemp* at *3). Thus, Demouchet can only establish the required elements of causation between Mega Men Sport and DeBryson's injuries through expert testimony.

Prior to DeBryson's diagnoses of ketoacidosis and diabetes, he was treated by Dr.

Odom. In November, 2010, he saw Dr. Odom for skin irritation, and was prescribed prednisone. [rec. doc. 51, Exhibit G]. At that time, DeBryson weighed 206 pounds.

When DeBryson returned to Dr. Odom's office on April 5, 2011, he weighed 183 pounds. [Exhibit C]. He was not dieting or exercising during this time period. [DeBryson Depo., p. 35:10-16; Danny Depo., p. 15:4-6].

On June 9, 2011, DeBryson saw Dr. Todd Bacquet ("Bacquet"), a specialist in treating diabetes. [rec. doc. 51, Exhibit H, Bacquet's office notes]. At that time, DeBryson weighed 210 pounds. [*Id.*].

Dr. Bacquet last saw DeBryson on August 2, 2012. [rec. doc. 51, Exhibit I, Bacquet Deposition ("Bacquet Depo."), pp. 21:1-2]. DeBryson failed to show up for scheduled appointments on August 23, 2012, and October 15, 2012. [Bacquet Depo, p. 22:7-11].

Dr. Bacquet could not render an opinion as to whether there was a causal connection between DeBryson's diabetes, ketoacidosis and dehydration and his use of Mega Men Sport or any other supplement. [Bacquet Depo., pp. 17:20-25; 40:20-24; 41:1-25-42:1-9]. Further, Dr. Bacquet testified that he could not determine whether the amount of caffeine contained in Mega Men Sport could cause dehydration or result in ketoacidosis. [Bacquet Depo., p. 50:12-21].

To prevail on his failure to warn claim, Demouchet needs to show a potentially damage-causing characteristic of GNC's Mega Men Sport and that GNC failed to use reasonable care to provide an adequate warning.  However, Demouchet presented no evidence about the cause, frequency, severity or consequences of Mega Men Sport.  Without a proper understanding of Mega Men Sport's damage-causing characteristics, the scope of GNC's duty to warn is unclear.  *Grenier*, 243 F.3d at 205.

 A "mere allegation of inadequacy" is insufficient for a plaintiff to survive summary judgment on a failure-to-warn claim.  *Stahl*, 283 F.3d at 264 (*quoting Anderson v. McNeilab, Inc*., 831 F.2d 92, 93 (5th Cir. 1987)). The plaintiff must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial" to defeat summary judgment. *Id*. at 264-65 (*citing Wallace v. Texas Tech Univ*., 80 F.3d 1042, 1047 (5th Cir. 1996)).

Here, Demouchet has shown no specific facts in the record showing a causal connection between DeBryson's use of Mega Men Sport and his injuries. There has been no expert evidence produced showing that a warning would have changed DeBryson's behavior, particularly since neither he nor his father had read the label.  Therefore, plaintiff cannot demonstrate that but for an inadequate warning, DeBryson would not have been injured.  *McDaniel v. Terex USA, L.L.C*., 466 Fed.Appx. 365, 377 (5th Cir. April 16, 2012).

Accordingly, the Court finds that summary judgment is appropriate.

## **CONCLUSION**

Based on the foregoing reasons, the Motion for Summary Judgment filed by General Nutrition Corporation [rec. doc. 51] is **GRANTED**.

Signed April 23, 2014, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE